**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **RICK HARLOW, JON SCHOEPFLIN,** | ) | |
| **MYRA LISA DAVIS, and JIM KOVAL,** | ) | |
| **individually and on behalf of a class** | ) | |
| **of others similarly situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.  08-2222-JWL** |
| | ) | |
| **SPRINT NEXTEL CORP. and** | ) | |
| **SPRINT/UNITED MANAGEMENT CO.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM AND ORDER**

Plaintiffs Rick Harlow, Jon Schoepflin, Myra Lisa Davis, and Jim Koval filed a lawsuit against Sprint Nextel Corporation and Sprint/United Management Co. (collectively referred to as Sprint) alleging that Sprint failed to pay them proper commissions.  The case is currently before the court on Plaintiffs' Motion for Class Certification (Doc. 38), Sprint's Opposition to the motion (Doc. 46), Plaintiffs' Reply Memorandum (Doc. 55), Sprint's Sur-Reply (Doc. 59), and Plaintiffs' Sur-Sur-Reply (Doc. 63).  The motion was argued before the court on Wednesday, November 26, 2008. For the reasons discussed below, the motion to certify a class is granted.

**BACKGROUND**

According to the Second Amended Complaint (Doc. 43), the named Plaintiffs are current or former employees of Sprint's Business Direct Channel, and they identify the relevant time period of their employment as ranging from 2003-2008. Plaintiffs were all subject to the same or similar Business Incentive Compensation Plans that governed commissions they would receive based on sales of various products and services. Due to problems with Sprint's computers, Plaintiffs allege, Sprint failed to pay them the correct commissions, amounting to approximately $500 to $1000 or more per month.

Plaintiffs maintain that Sprint's computer system failed to accurately track sales information. Specifically, Plaintiffs contend that Sprint improperly deducted commissions from employees for failing to meet quotas when in fact they had met the quotas but the computer system had failed to track all of the activations and upgrades they sold. Plaintiffs also assert that Sprint denied commissions through improper and erroneous charge backs, and that when Sprint did reconcile some commission errors, it failed to reconcile those errors to the managers of the employees, who would also be entitled to additional commissions. The focal point of Plaintiffs' complaint is a widespread, though undefined at this point, problem with Sprint's computer system that affects the amount of commissions the class members received.

Also of note, though certainly not determinative to this case, is a recent class action certified by Chief Judge Vratil involving a group of employees in Sprint's

retail stores who allege that Sprint has failed to pay them proper commissions due to a systematic computer problem. *Sibley v. Sprint Nextel Corp.*, No. 08-2063, 2008 WL 5046348 (D. Kan. Nov. 24, 2008).

## DISCUSSION

### I.    Legal Standard for Class Certification

The standards for certifying a class action are set forth in Fed. R. Civ. P. 23. This rule requires all four prerequisites of Rule 23(a) and at least one of the three requirements of Rule 23(b) to be satisfied. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1262 (10th Cir. 2004). The decision whether to certify a class is committed to the broad discretion of the trial court. *Rector v. City & County of Denver*, 348 F.3d 935, 949 (10th Cir. 2003); *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1287 (10th Cir. 1999). The court must perform a rigorous analysis of whether the proposed class satisfies the requirements of Rule 23. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1982); *J.B.*, 186 F.3d at 1287-88; *see also Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988) (party seeking to certify a class is under a strict burden of proof to show that all of the requirements are clearly met). The court should accept the allegations in the complaint as true, although it "need not blindly rely on conclusory allegations which parrot Rule 23 requirements [and] may . . . consider the legal and factual issues presented by plaintiff's complaints." *J.B.*, 186 F.3d at 1290 n.7 (quotation omitted;

brackets in original).  The court is to remain focused on the requirements of Rule 23 rather than looking at the merits underlying the class claim.  *Shook v. El Paso County*, 386 F.3d 963, 971 (10th Cir. 2004) (noting the question is not whether the plaintiffs will prevail on the merits, but rather whether the requirements of Rule 23 are met); *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988); *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982).

## II.    Class Definition and Claims

Plaintiffs proposed the following class definition:

> those who worked in Sales and Distribution for Defendant's Business Direct Channel since January 1, 2006, including General Business, Enterprise, and Public Sector Account Executives (or those in similar positions), and those who managed these individuals, who were paid in full or in part based on commissions.

This definition is intended to include two types of jobs from the Business Direct Channel: the Account Executive position and those who manage the Account Executives.  Additionally, Plaintiffs clarify that they understand "Public Sector" to include account executives who work with public agencies, including federal agencies.  According to Plaintiffs, Sprint perhaps classifies "Federal" as a separate category.  Regardless, Plaintiffs seek to include account executives that handle federal customers, and Sprint has offered no specific objection to that inclusion.

As for class claims, Plaintiffs originally sought relief based on five causes of action: Count I - Violation of Kansas Wage Payment Act; Count II - Breach of

Contract; Count III - Quantum Meruit; Count IV - Promissory Estoppel; and Count V - Unjust Enrichment. The parties entered a joint stipulation to dismiss Counts III-V. (Doc. 24.) Thus, only the KWPA claim and the breach of contract claim remain pending.

Regarding the breach of contract claim, the parties agree that it is subject to a one-year limitations period and so is limited to conduct occurring after May 9, 2007. Additionally, at oral argument, Plaintiffs' counsel agreed that the breach of contract claim they are pursuing is based solely on Sprint's computer problems. Recalling the allegations in the complaint, Plaintiffs contend that Sprint breached the relevant contracts by failing to use an accurate computer system to evaluate employee commissions. This claim, then, centers on Sprint's computerized procedures for calculating and paying commissions and not, for example, a policy-based decision by Sprint to award a particular commission to one employee over another. This distinction is key to the certification analysis.

III.   Analysis

In determining whether class certification is appropriate, the court must find that the proposed class meets the four prerequisites of numerosity, commonality, typicality, and adequacy of representation set forth in Fed. R. Civ. P. 23(a). *Integra*, 354 F.3d at 1262 & n.3. The court must also find that the plaintiffs' claim is

maintainable as a class action under one (or more) of the three categories of suits described in Rule 23(b). *Id.* In this case, the most vigorous arguments involve the 23(b) question, and so analysis will start with that issue.

**A.     Certification Under Rule 23(b)**

Plaintiffs wish to certify their class under the provisions of Rule 23(b)(3), which require the court to find that: (1) common questions predominate over questions affecting only individual members; and (2) class resolution is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615.

*1.     Predominance*

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "The nature of the evidence that will suffice to resolve a question determines whether the question is common or individual." *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005). If the proposed class members will need to present evidence that varies from member to member in order to make out a prima facie case, then it is an individual question. *Id.* If, on the other hand, the same evidence will suffice for each member to make out a prima facie case, then it is a common question. *Id.* Thus, the predominance requirement is satisfied "if there is a common nucleus of operative facts relevant to the dispute and those common questions represent a significant aspect of the case which can be resolved for all members of the class in a

single adjudication." *Heartland Commc'ns, Inc. v. Sprint Corp.*, 161 F.R.D. 111, 117

(D. Kan. 1995)

Plaintiffs start with the premise that all class members "worked in the same

two positions, for the same company, selling the same products and services, under

the same or similar commission agreements, and all relied on Defendants' broken

systems for the payment of their commissions."  And they identify the following

common questions of law or fact that this case presents:

• whether Sprint's computer program systematically under-reported revenues;
• whether class members are entitled to commissions because the computer
  system failed to match records appropriately;
• what limitations period applies to the KWPA claims;
• whether language in the relevant contract is enforceable when it states that
  administrative delay in paying commissions is not a breach; and
• whether class members lose their right to pursue unpaid commissions if they
  do not follow internal appeal procedures.

The main focus of Sprint's opposition is that the issues are so individualized in

nature that they would require a separate inquiry for each plaintiff.  Plaintiffs' case,

Sprint argues, is "premised on allegations of thousands of discrete instances of unpaid

commissions," each of which would require proof of several things. Specifically,

Sprint contends that for every event for every class member, the court would need to

conduct a multi-step inquiry to see if that particular plaintiff did not receive

appropriate commissions: is the employee eligible; did the employee earn

commissions; did the employee receive the commissions; if not, did the employee

give notice to Sprint of the commission error.  Each of these questions, Sprint

contends, requires evidence on multiple sub-issues, including such things as the number of days in a month the employee was eligible, whether the employee filed accurate paperwork, the amount of any outstanding liabilities the employee might have, and whether the employee met any performance thresholds or quotas. Additionally, Sprint protests that none of the class members' claims are related in such a way that the any particular evidence would serve as common proof for claims of other class members.

At oral argument, Sprint offered several sample events from one of the named plaintiffs to illustrate how individualized the claims would be.  In one sample, the plaintiff challenged a commission that Sprint had credited to another employee.  The plaintiff claimed that he made the sale and was thus entitled to the commission, even though the other employee activated the customer's phone while the plaintiff was away on vacation.  For the plaintiff to prevail on this claim, Sprint contends, he would need to establish that he, and not the other employee, was in fact responsible for the sale by producing documentation to support his claim.

As a second example, Sprint described a transaction where the plaintiff activated service for a customer who then deactivated the following day.  Due to the immediate deactivation, Sprint declined to pay the plaintiff a commission for that event in accordance with the terms of its commission agreement.  Again, Sprint asserts, for the plaintiff to succeed on that claim as a breach of his contract, he would need prove that the customer did not deactivate (and instead, switched phone plans,

-8-

for example).  Thus, Sprint maintains, each claim of all class members will require this individualized analysis, making the individual issues predominate.

Sprint urges this court to adopt the reasoning set forth in *Snyder Communications, L.P. v. Magana*, 142 S.W.3d 295 (Tex. 2004), which involved a class certification motion brought by a group of sales representatives challenging their employer's commission payment system.  The court held that "the primary issue in dispute—whether [the employer] failed to pay earned commissions to its sales associates—is highly individualized because of the many criteria a particular [document] had to meet before [the employer] accepted it."  *Snyder*, 142 S.W.3d at 300.  The court found that common issues did not predominate because "[e]valuating whether a class member was improperly denied commissions would thus require an examination of not only *each* disputed [document] but also [the employer's] and perhaps [the client's] records because a determination of whether commissions were due and owing will not be apparent from the face of [the document.]" *Id.* at 301.

Sprint's concerns are well-taken.  But, as noted above, Plaintiffs' complaint relies on a faulty computer system that resulted in systematic calculation errors.  Thus, claims that purport to challenge a policy judgment by Sprint—that one employee is entitled to a particular commission over another—would not be before the court in this lawsuit.  Instead, the common issue to be decided is whether Sprint's computerized process for determining commissions includes the correct numbers and performs the appropriate calculations to pay employees accurately.

-9-

The examples Sprint offered and those present in the *Snyder* litigation, therefore, would not necessarily be a part of this litigation.  Plaintiffs claims are not concerned with decisions by Sprint with which an employee might merely disagree. It is irrelevant to this case that the plaintiff in Sprint's first example believes that Sprint wrongly credited another employee for a service he sold.  Instead, the class claims focus on the proper functioning of the computer system Sprint uses to calculate and award commissions.

In addition to the factual issue of a computer error, common legal questions predominate over individual ones.  The limitations period applicable to KWPA claims, for example, could be addressed for all class members in one proceeding. The same is true for claims about Sprint's internal appeals process or the contractual provision regarding administrative delay.

Sprint compares this case to the facts of *J.B. ex rel. Hart v. Valdez*, arguing that broad allegations of systematic problems are insufficient to warrant class certification by a group of plaintiffs who present distinct factual issues.  In *J.B.*, plaintiffs sought to certify a class of all children in state custody who required therapeutic services or support.  Plaintiffs alleged that the common claim was " that systematic failures in the . . . child welfare delivery system den[ied] all members of the class access to legally-mandated services."  *J.B.*, 186 F.3d at 1289. The Tenth Circuit "refuse[d] to read an allegation of systematic failures as a moniker for meeting the class action requirements."  *Id.*.  According to the court, the

circumstances of the class members varied so greatly that no specific common issue of fact or law prevailed.

Plaintiffs distinguish *J.B.* on the grounds that all class members in this case suffer from the same harm (nonpayment of commissions) from the same cause (Sprint's flawed commissions system).  Instead, Plaintiffs compare this case to *Heartland Communications, Inc. v. Sprint Corp.*, involving plaintiffs who brought a breach of contract case against Sprint alleging that it systematically under-reported commissions and bonuses due them.  This court certified the class of plaintiffs, based on two common questions: the proper interpretation of the relevant contracts under Kansas law and whether Sprint's accounting methods systematically under-reported revenues.

Given the narrow focus of Plaintiffs claims on the computer problems, this court agrees that *Heartland* is most analogous.  Thus, the court is satisfied that common issues, both factual and legal, predominate individual ones, at least at this stage.  Should it become apparent later in the proceedings that common issues no longer predominate, the court can revise or decertify the class as appropriate.  *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir. 1968).

2.    *Superiority*

The requirement that a class action be the superior method for resolving the claims insures that no other available method of handling the litigation has greater practical advantages.  Fed. R. Civ. P. 23 advisory committee notes; *see also In re*

*Universal Serv. Fund Tele. Billing Practices Litig.*, 219 F.R.D. 661, 679 (D. Kan. 2004).  Sprint asserts that a class action of this magnitude would be unmanageable because of the individualized inquiries to each plaintiffs' claims.  As noted, however, a particularized review of many individual transactions is not needed to evaluate the accuracy of Sprint's computer system.

Calculating damages, however, may require more individualized calculations. Plaintiffs specifically respond to Sprint's concerns by noting that they have retained experts who can analyze the relevant electronic data about commissions to calculate damages owed to each class member:  "Although there is a significant amount of data, it is not as complicated and unmanageable as Defendants would have it seem. On the contrary, determining commissions due may be cumbersome and time-consuming, but it involves a fairly simple process for Plaintiffs' experts who are well experienced in this area."

The court is comfortable that the class claims are manageable and that even the damages calculation would not be insurmountable with the assistance of experts from both sides.  *See, e.g.*, *Smith v. MCI Telecomms. Corp.*, 124 F.R.D. 665, 677-78 (D. Kan. 1989).

Moreover, the court appreciates the usefulness of the class action as a vehicle for lawsuits like this one.  The alternative to a class action would be for many plaintiffs to bring individual suits against Sprint. This would be grossly inefficient, costly, and time consuming because the parties, witnesses, and courts would be

forced to endure unnecessarily duplicative litigation. The thousands of class members are dispersed across the country, each with relatively similar claims. Many of the individual claims will likely involve relatively insubstantial amounts of money such that a class action is perhaps the only feasible way for plaintiffs to pursue those claims. Thus, the court is persuaded that a class action is by far the most superior method for resolving the claims at issue in this lawsuit. *See, e.g.*, *Universal Serv.*, 219 F.R.D. at 679.

**B.     Four Prerequisites Set Forth in Rule 23(a)**

For class certification, the proposed class must meet the four prerequisites of numerosity, commonality, typicality, and adequacy of representation set forth in Fed. R. Civ. P. 23(a)

*1.     Numerosity*

Rule 23(a)(1) allows certification of a class only if the proposed class is so numerous that joinder of all class members would be impracticable.  To satisfy this numerosity requirement, plaintiffs "must present some evidence or otherwise establish by reasonable estimate the number of class members who may be involved." *Rex v. Owens*, 585 F.2d 432, 436 (10th Cir. 1978).  This is a fact-specific inquiry, as there is no set formula for determining if the class is so numerous that it should be certified.  *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006).

Plaintiffs initial class definition included Account Executives, their managers, and "and other Business Direct Channel employees who were paid in full or in part

-13-

based on commissions."  In response to this broader class definition, Sprint posited that 5400 people would be members.  That number should decrease given Plaintiffs' revision of the class definition (to remove the quoted "and any other..." clause), but Plaintiffs maintain that the proposed class should still include "hundreds of Account Executives and their managers."  Plaintiffs assert that the sheer number of people, in addition to their geographical diversity, make joinder impracticable.

In response, Sprint contends that Plaintiffs lack evidence that all proposed class members were improperly denied commissions.  But this argument goes directly to the merits of the case, which is inappropriate at this stage of the proceedings. *Shook*, 386 F.3d at 971.

Affidavits from the four named plaintiffs alone identify over 120 potential class members in California, Colorado, Texas, Michigan, Ohio, Maryland, Virginia, and Washington D.C.  These statistics suggest that the proposed class is so numerous and geographically diverse that joinder would be impractical.  Thus, the numerosity requirement is satisfied.

### 2. *Commonality*

Rule 23(a)(2) requires the presence of questions of law or fact common to the class.  This requirement is satisfied where members of a putative class "possess the same interest and suffer the same injury." *Gen. Tele. Co.*, 457 U.S. at 156. Commonality is not necessary on every issue raised in the case. *Realmonte v. Reeves*,

-14-

169 F.3d 1280, 1285 (10th Cir. 1999).  A finding of commonality "requires only a single issue common to the class."  *J.B.*, 186 F.3d at 1288.

Sprint again argues that the proposed class will need to present evidence that varies from member to member and thus the questions of law and fact are individual rather than common.  Although Plaintiffs allege a systemic failure of underreported sales and widespread computer problems that resulted in unpaid commissions, Sprint suggests that Plaintiffs have failed to provide enough evidence—about the type of computer problems or how many problems arose or how many class members were affected—for the court to conclude that the same evidence would be used to answer the questions for all class members.

Keeping in mind that Plaintiffs assert the breach stems from an innacurate computer system, and recognizing that the commonality requirement of Rule 23(a) is a far less demanding standard than the predominance analysis of Rule 23(b)(3). *Monreal v. Potter*, 367 F.3d 1224, 1237 (10th Cir. 2004), this court is confident that Plaintiffs class satisfies the commonality requirement.

### 3.    *Typicality*

Rule 23(a)(3) requires the named plaintiffs to show that the claims or defenses of the representative parties are typical of those of the class members they seek to represent.  *Rector*, 348 F.3d at 949.  "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class

-15-

representative and class members are based on the same legal or remedial theory."
*Adamson*, 855 F.2d at 676; *see also Anderson*, 690 F.2d at 800.

According to Sprint, "Plaintiffs are . . . not typical of the class they seek to represent because none of them *have* any claims against Sprint."  Sprint argues that Plaintiffs have no evidence that they were harmed by Sprint, and in fact Sprint asserts that it *overpaid* three of the named plaintiffs, and probably the fourth too.  Plaintiffs dispute these calculations, arguing that they are based on a faulty data set and an unenforceable internal appeals system.

Again, these arguments touch too closely on the underlying merits of the case. That inquiry is improper at this stage of the proceedings, *Shook*, 386 F.3d at 971, and Plaintiffs should be afforded discovery before arguing the merits.  *Sibley*, 2008 WL 5046348, at *6 n.11.  Based on allegations in the complaint, the claims of the named Plaintiffs are typical of those of proposed class members.

### 4.   *Adequacy of Representation*

Rule 23(a)(4) requires that the named plaintiffs must fairly and adequately protect the interests of class members.  To satisfy this prerequisite, the plaintiffs must show that their interests are aligned with those of the persons they seek to represent and that they will vigorously prosecute the class through qualified counsel.  *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002).

Sprint asserts that Plaintiffs' attorneys face conflicts of interest in representing all of the proposed class members.  Sprint identifies as possible conflicts situations

where two class members believe they are each entitled to the same commission.  In those circumstances, Sprint posits, the class attorneys would face a conflict because they would essentially have to argue against one of their clients while supporting the position of another.

Certainly this type of conflict of interest is troublesome.  As detailed above, however, the claims in this lawsuit focus on the accurate operation of the computer system Sprint uses to calculate commissions, and not on policies about which commissions should be awarded to which employee.  Accordingly, Plaintiffs' attorneys will not be placed in the position of favoring one client over the other. Instead, the class is working toward a computer system that accurately implements the policies and procedures of the commissions contracts.

### C.      Conclusion

Plaintiffs' proposed class satisfies the requirements of Rule 23.  As such, the class will be certified for purposes of the KWPA and breach of contract claims. Additionally, because this case is so similar to the earlier-filed *Sibley v. Sprint Nextel Corp.*, and consistent with this court's policy and the views expressed by counsel at oral argument, the clerk of the court is directed to transfer this case to Chief Judge Vratil for continued proceedings.

### IV.      Appointment of Counsel

An order certifying a class must also appoint class counsel that will adequately represent the interests of the class. Fed. R. Civ. P. 23(c)(1)(B), (g)(1). The court must consider the work counsel has done in identifying or investigating potential claims in the actions, counsels' experience in handling class actions and other complex litigation and claims of the type asserted in the present action, counsels' knowledge of the applicable law, and the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(C). After reviewing the record, the court is satisfied that the firms of Nichols Kaster, PLLP and Stueve Siegel Hanson LLP satisfy these criteria and will adequately represent the interests of the class as counsel.

## V.    Notice

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The overwhelming majority of class members, if not all of them, can likely be identified through reasonable efforts. To that end, Sprint is directed to provide to Plaintiffs the names, addresses, and telephone numbers of all employees who are potential members of the class by January 12, 2009.  Also by January 12, 2009, plaintiffs shall prepare and submit to the court for approval an order regarding notice that complies with the requirements of Fed. R. Civ. P. 23(c).

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiffs' Motion

for Class Certification (Doc. 38) is GRANTED.


**IT IS FURTHER ORDERED** that the clerk of the court is directed to

transfer this case to Chief Judge Vratil for continued proceedings.


**IT IS SO ORDERED** this 10th day of December, 2008.

         s/ John W. Lungstrum
        John W. Lungstrum
        United States District Judge