IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RICK HARLOW,                        )
et al.,                             )
                                    )
                Plaintiffs,         )
                                    )
v.                                  )          Case No. 08-2222-KHV-DJW
                                    )
SPRINT NEXTEL CORPORATION,          )
et al.,                             )
                                    )
                Defendants.         )

## MEMORANDUM AND ORDER

Plaintiffs, who are current and former employees of Defendants' Business Direct Channel, bring this action under the Kansas Wage Payment Act[1] ("KWPA"), and Kansas contract law, alleging Defendants failed to pay them earned commissions due to systematic problems with Defendants' computer systems.  Currently before the Court is Defendants' Motion to Compel Responses to Their Second Set of Interrogatories and Second Set of Requests for Production of Documents (ECF No. 171).  Defendants request an order compelling Plaintiffs to fully respond to Defendants' Second Interrogatory Nos. 3 and 4, which seek Plaintiffs' trial plan, and to Defendants' Second Request for Production No. 4, which seeks class member responses to a client survey, created by Plaintiffs' counsel and posted on the firm's website, after the case was certified as a class action.  Because the Court finds that Interrogatory Nos. 3 and 4 have been adequately answered and that the documents

---

[1]K.S.A. 44-313.

1

sought in Request No. 4 are protected by the attorney-client privilege, the motion is denied.

## I.   Background

In their employment with Defendants, Plaintiffs were compensated under commission agreements.  Defendants agreed to pay commissions for products and services either sold directly by Plaintiffs or sold by persons Plaintiffs managed.  Plaintiffs alleged that Defendant's computer system failed to accurately track sales information.  Specifically, Plaintiffs contend that Defendants improperly deducted commissions from employees for failing to meet quotas when in fact they had met the quotas but the computer system had failed to track all of the activations and upgrades they sold.  Plaintiffs also assert that Defendants denied commissions through improper and erroneous charge backs, and that when Defendants did reconcile some commission errors, they failed to reconcile those errors to the managers of the employees, who would also be entitled to additional commissions.

On December 10, 2008, the Court granted Plaintiffs' motion for class certification and certified the case as a class action under Fed. R. Civ. P. 23(a) and (b)(3).[2]  In granting class certification, the Court noted that "[s]hould it become apparent later in the proceedings that common issues no longer predominate, the court can revise or decertify the class as appropriate."[3]

From May 2010 to June 2011, this case was stayed pending mediation in a related

---

[2]*See* ECF No. 77.

[3]*Id.* at 11; *see* Fed. R. Civ. P. 23(c)(1)(C) (allowing order granting class certification to be "altered or amended before final judgment").

2

case, *Sibley v. Sprint Nextel Corp.*, D. Kan. Case No. 08-2063-KHV.  When the stay was lifted, Defendants served their Second Set of Interrogatories and Second Set of Requests for Production of Documents on each of the named Plaintiffs.  Each of the named Plaintiffs filed nearly identical responses.  The parties disagreed over the adequacy of many of the responses, but have now narrowed their dispute to the three discovery requests that are the subject of this motion: Second Interrogatory Nos. 3 and 4, and Second Request for Production No. 4.

## II.     Interrogatory Nos. 3 and 4 Seeking Plaintiffs' Trial Plans

Interrogatory Nos. 3 and 4 contain nearly identical language; the important difference is that No. 3 requests information about Count I (violation of KWPA) while No. 4 requests information about Count II (breach of contract).  Part (a) of the Interrogatories asks Plaintiffs to set forth the questions of law or fact common to the class under Counts I and II, as well as provide an explanation of how those questions will be tried.  Part (b) of the Interrogatories asks Plaintiffs to provide the same type of information regarding questions of law or fact that are not individualized and not common to the class.  Part (c) seeks Plaintiffs' proposed process for calculating and distribution of damages arising under each count.

Plaintiffs object to Part (a) on the grounds that the interrogatory is vague, seeks protected information, calls for a legal opinion and legal conclusion, and is premature given that discovery is ongoing.  In their response to Interrogatory No. 3, Part (a), Plaintiffs set out

3

twenty-five questions of law and fact common to the class under Count I.[4]  In their response

to Interrogatory No. 4, Part (b), Plaintiffs supplemented those twenty-five questions from

No. 3 with three additional questions of law and fact common to the class under Count II.

In response to the Interrogatories' request for an explanation of how those questions

will be tried, Plaintiffs state that they:

> [A]nticipate that trial will include testimony from the parties' experts, who
> will be reviewing and analyzing Sprint's class-wide data production and
> calculating class-wide damages.  Plaintiffs also intend to call several witnesses
> to support their claims that Sprint's commission system caused Sprint to pay
> the class inaccurately.  Those witnesses will include, but will not be limited
> to, current and former Sprint business channel employees, their managers,
> upper management, Sprint commission department employees, Sprint appeals
> department employees, Sprint systems and IT employees, Sprint risk
> management employees, and various people who were part of Sprint's
> initiatives relating to its problems with not being able to accurately calculate
> and pay commissions due to the class.  Plaintiffs also plan to introduce
> numerous documents produced by Sprint detailing, for instance, how its
> commission system did not accurately determine the commissions due to the
> class, the problems with the system, and the problems with Sprint's internal
> appeals process.  Plaintiffs cannot identify at this time who they intend to call
> as witnesses at trial or which documents they will use, as discovery is
> continuing consistent with the Court's scheduling orders.  Plaintiffs will
> supplement this information consistent with these scheduling orders and the
> Federal Rules of Civil Procedure.[5]

In their response to Part (b), Plaintiffs object on the grounds that the interrogatory is

vague, seeks protected information, calls for a legal opinion and legal conclusion, and is

---

[4]An example of one of Plaintiffs' twenty-five questions of law or fact common to the class
under the KWPA claim is: "Did the commission system that all Plaintiffs and class members were
subject to fail to pay accurate commissions?"

[5]Ex. 1 to Pls.' Resp. (ECF No. 174-2) at 5.

premature given that discovery is ongoing.  Plaintiffs further respond that they are unaware

of questions of law or fact that are uncommon to them and the class.

In their response to Part (c), Plaintiffs object on the grounds that the interrogatory is

vague, seeks protected information, calls for a legal opinion and legal conclusion, is

premature, and seeks information regarding Plaintiffs' expert report.  They further respond

that:

> With respect to calculating damages, Plaintiffs' experts plan to use the
> class-wide commission related data that will be produced by Sprint, in order
> to run their largely automated process to produce a report identifying the
> amount of damages each class member sustained as a result of Sprint's failure
> to pay accurate commissions.  Plaintiffs are developing an automated process
> to analyze all data related to each transaction found throughout Defendants'
> various systems to determine if the transaction is commissionable, whether
> Defendants paid the commission properly, and whether additional
> compensation is due. Plaintiffs have set up their system to standardize,
> process, and import the class-wide data, have developed coding to analyze and
> search the class-wide data, and have prepared a reporting mechanism to
> explain their results.  They continue to refine that process in preparation for
> the class-wide commission-related data production and their expert reports.[6]

Additionally, Plaintiffs state that the process for calculating and distributing damages will

be explained in further detail after Plaintiffs' experts have had a chance to analyze the data.

In their motion, Defendants seek to compel Plaintiffs to appropriately respond to these

interrogatories.   They argue that Plaintiffs have failed to sufficiently respond to the

interrogatories and have not provided an adequate basis for their objections.  According to

Defendants, not only is this information necessary for an evaluation of whether this case may

---

[6]Ex. 1 to Pls.' Resp. (ECF No. 174-2) at 6.

be maintained, but the information must be provided under the Supreme Court's recent decision in *Wal-Mart Stores, Inc. v. Dukes*.[7]

Plaintiffs oppose the motion. They maintain that they have fully answered the questions asked and will provide additional information consistent with the Federal Rules and the Scheduling Order after they have completed discovery and their expert reports. Plaintiffs do not reassert or rely upon any of their objections to these interrogatories (other than prematurity) in their response to the motion to compel. The Court will therefore consider these objections abandoned.[8]

The Court has reviewed Plaintiffs' responses to Interrogatory Nos. 3 and 4 and agrees with Plaintiffs that their responses adequately answer these interrogatories. As requested, Plaintiffs set forth what they contend are the questions of law and fact common to the class. Furthermore, Plaintiffs provided some details of their trial plan, including possible categories of testimony and types of evidence that might be presented. Plaintiffs also explained that they have developed (and continue to refine) a largely automated process to do the following tasks: (1) import the class-wide data being produced by Defendants related to transactions in Defendants' systems; (2) analyze each transaction and determine if it is "commissionable;" and (3) produce a report identifying the amount of damages sustained

---

[7]131 S. Ct. 2541 (2011).

[8]*See Moses v. Halstead,* 236 F.R.D. 667, 672 n.8 (D. Kan. 2006) ("When ruling on a motion to compel, the Court will consider only those objections that have been (1) timely asserted, and (2) relied upon in response to the motion to compel.").

by each class member.  Plaintiffs state that, although they cannot identify specific witnesses or documents at this time because discovery is ongoing, they will supplement their answers as required by the scheduling order and the Federal Rules of Civil Procedure.

The Court rejects Defendants' argument that Plaintiffs' answers are deficient because they do not demonstrate that Plaintiffs' trial plan will stand up to a Rule 23 class-certification analysis.  Defendants argue that, pursuant to *Dukes* and other cases, the "commonality" requirement of Rule 23(a) requires Plaintiffs to affirmatively demonstrate that their claims depend upon a "common contention . . . capable of classwide resolution."[9]  In determining if this standard is met, it may be necessary for the court to "probe behind the pleadings" to determine if Plaintiffs are prepared to prove that there are common questions of fact and law.[10]  Defendants assert that trial plans are critical for the court to perform this Rule 23 analysis, and that Plaintiffs' answers to Interrogatory Nos. 3 and 4 fail to support a finding that the commonality standard has been met.[11]

The Court finds that Defendants' argument is made in the wrong context.  Defendants have propounded interrogatories upon Plaintiffs and Plaintiffs have answered with the information *requested* by the interrogatories.  They have set forth twenty-five questions of law or fact common to the class under the KWPA claim, as well as three additional questions

---

[9]*Dukes*, 131 S. Ct. at 2551.

[10]*Id.* (quoting *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160 (1982)).

[11]For example, Defendants  make the merits-based argument that Plaintiffs will have to perform an individualized damages analysis for each plaintiff, which undercuts maintaining this case as a class action.

for the breach of contract claim.  They have also set out how they propose the questions of law and fact common to the class be tried.  They have further explained their proposed process for calculation and distribution of damages.  While Defendants may disagree that Plaintiffs' answers to the interrogatories are not sufficient to meet the commonality standard, that does not show that Plaintiffs have failed to adequately answer the specific interrogatories propounded.  Defendants' argument that Plaintiffs' trial plan is insufficient to support a class-certification finding would be more appropriately raised in a motion to decertify the class.  All the cases upon which Defendants rely arise in the context of motions to certify or decertify a class, not of motions to enforce discovery.[12]  In other words, the issues and arguments Defendants raise in their motion have little to do with compelling Plaintiffs to fully provide the discovery actually requested in the interrogatories.  Rather, they appear to be directed more toward a whether class certification is appropriate.  This is an issue for the Court to examine if and when a motion to decertify the class is filed.

Finally, the Court notes that Judge O'Hara recently addressed a similar issue on nearly identical interrogatories and answers, as well as similar arguments, in the related case of *Sibley v. Sprint Nextel Corp.*[13]  In that case, Judge O'Hara denied the defendants' motion

---

[12]There may be one exception.  In a string citation in their brief, Defendants cite the Eastern District of Pennsylvania case *Martin v. Citizens Fin. Grp., Inc.*, No. 10-00260-MSG (June 23, 2011), noting in a parenthetical that the court granted a motion to compel discovery of a trial plan.  It appears, however, that this case is unpublished and is not available on either Westlaw or LEXIS. Defendants  have failed to attach it as an exhibit to the memorandum in violation of D. Kan. Rule 7.6(c).  Consequently, the Court has not considered this case.

[13]See ECF No. 257 in *Sibley v. Sprint Nextel Corp.*, D. Kan. Case No. 08-2063-KHV (D. Kan. Oct. 11, 2011).

to compel the plaintiffs to further answer interrogatories seeking their "trial plan," agreeing that plaintiffs had adequately answered the questions asked.  He rejected the defendants' argument that the plaintiffs' answers failed to support a finding that the Rule 23 commonality standard had been met.[14]

Defendants' motion to compel Plaintiffs' to provide further responses to Second Interrogatory Nos. 3 and 4 is denied.

## III.   Request No. 4 Seeking Class Member Survey Responses

Second Request No. 4 ask Plaintiffs to produce class member responses to a client survey that Plaintiffs' class counsel created and posted on their firm website after this case was certified as a class action.[15]  The survey asked class members questions about such things as the amount of commissions owed them, their beliefs about why Defendants did not pay the commissions, and their ranking of the effectiveness of the commissions-appeals procedure.  Plaintiffs state that the survey was accessed 922 times, but not all individuals who accessed the survey answered the questions, and some individuals visited the survey more than once.  In response to discovery requests and because the website was accessible by the public, Plaintiffs provided Defendants with a blank copy of the survey and identified each class member who accessed the survey.  Plaintiffs refused, however, to provide the class members' responses to the survey.  Plaintiffs contend that any survey responses to

---

[14]*Id.* at 9-10.

[15]*See*  www.nka.com/case/sprint-nextel-business-channel-employees  (last  accessed  on January 20, 2012).

survey questions distributed by Plaintiffs' counsel after this case was certified as a class action are protected from disclosure by the attorney-client privilege and the work-product doctrine.  Defendants disagree and move to compel production of the survey responses.

Federal Rule of Evidence 501, as amended effective December 1, 2011, provides "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."  In this case, Plaintiffs' claims are brought under the KWPA and Kansas contract law; therefore, Kansas privilege law applies.  Under Kansas law, the essential elements of the attorney-client privilege are:

> (1) Where legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) the communications made in the course of that relationship (4) made in confidence (5) by the client (6) are permanently protected (7) from disclosures by the client, the legal advisor, or any other witness (8) unless privilege is waived.[16]

The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law.  Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."[17] The privilege serves the client's need for legal advice, but it also serves the attorney's need to receive complete information in order to give the proper advice.[18]  It not only protects advice given by an

---

[16]*ERA Franchise Sys., Inc. v. N. Ins. Co. of New York,* 183 F.R.D. 276, 278 (D. Kan. 1998) (citations omitted); *Cypress Media, Inc. v. City of Overland Park,* 268 Kan. 407, 418, 997 P.2d 681, 689 (2000) (citations omitted).

[17]*Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

[18]*Id.* at 390.

10

attorney in the course of representing the client, but also "protects confidential communications made by a client to an attorney in order to obtain legal assistance from the attorney in his or her capacity as a legal advisor."[19]   The existence of the privilege is determined on a case-by-case basis.[20]   The party seeking to assert the attorney-client privilege as a bar to discovery has the burden of establishing that it applies.[21]

Plaintiffs assert that the survey responses are protected by the attorney-client privilege because the class members are clients of class counsel and the survey responses constitute protected communications between class members and class counsel.  They argue that because the survey responses were communicated after the case was certified as a class action, the class members are clients of class counsel.  Defendants do not really dispute Plaintiffs' assertion that the class members who answered the survey are "clients" for purposes of attorney-client privilege.  Instead, they argue that whether an attorney-client relationship exists is not relevant because the survey responses contain discoverable factual information.

The Court disagrees with Defendants' argument that the issue whether an attorney-

---

[19]*Simmons Foods, Inc. v. Willis*, 191 F.R.D. 625, 632 (D. Kan. 2000) (internal quotation marks and citations omitted); *see also* K.S.A. 60-426(c)(2) (defining "Communication" to include "advice given by the attorney in the course of representing the client and . . . disclosures of the client to a representative, associate or employee of the attorney incidental to the professional relationship."); *Upjohn Co.*, 449 U.S. at 390 ("[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.").

[20]*Upjohn Co.*, 449 U.S. at 396–97.

[21]*Peat, Marwick, Mitchell & Co. v. West,* 748 F.2d 540, 542 (10th Cir. 1984).

client relationship exists is not relevant; the Court finds it is very relevant as it is one of the elements of attorney-client privilege. Here, the Court finds that because the survey responses were communicated after the case was certified as a class action, the class members are "clients" of class counsel for purposes of attorney-client privilege. Two leading treatises on class litigation support this. *Newberg on Class Actions* § 15.18 states that "[a]fter a court has certified a case as a class action and the time for exclusions has expired, the attorney for the named plaintiff represents all class members who are otherwise unrepresented by counsel."[22] The Manual for Complex Litigation likewise provides that, "[o]nce a class has been certified, the rules governing communications apply as though each class member is a client of the class counsel."[23] This is also in accordance with this Court's previous holding, in *Hammond v. City of Junction City, Kansas,*[24] that no attorney-client relationship exists between the class counsel and the putative class members *prior to* class certification.[25] Because the class members completed and submitted their online survey responses to Plaintiffs' counsel after the Court had certified the class, the class members are "clients" of Plaintiffs' counsel and their survey responses communicated to counsel may therefore be entitled to protection from discovery under the attorney-client privilege.

---

[22]Herbert B. Newberg, 5 Newberg on Class Actions § 15.18 (4th ed. 2002).

[23]Manual for Complex Litigation § 21.33 (4th ed. 2004).

[24]167 F. Supp. 2d 1271, 1286 (D. Kan. 2001).

[25]*Id.* (emphasis added).

Plaintiffs next assert that the survey responses are protected communications between class members and class counsel.  They argue that the responses were confidential, made in course of the representation of the class members by class counsel, and are incidental to the professional relationship.  Requiring them to produce the survey responses is no different than requiring production of letters or emails between the class members and their counsel.

Defendants argue that the survey responses are not privileged because they ask for and contain factual information.  It is true that the attorney-client privilege "extends only to communications and not to facts."[26]  But the problem with Defendants' argument is that Defendants seek to compel production of the actual "communications" with counsel.  "A fact is one thing and a communication concerning that fact is an entirely different thing."[27]  While Defendants could discover (through, for example, interrogatories and depositions) the facts that class members included in their survey responses,[28] "[t]he client cannot be compelled

---

[26]*Upjohn Co.*, 449 U.S. at 395 (quoting *Philadelphia v. Westinghouse Elec. Corp.*, 205 F. Supp. 830, 831 (E.D. Pa. 1962)).

[27]*Id.* at 395–96.

[28]Incorporation of the facts into the communications does not shield the facts from discovery. *Id.*  Thus, factual information revealed in the survey responses are likely discoverable through interrogatories, depositions, or other discovery vehicles.  *See Lintz v. Am. Gen. Fin., Inc.*, No. 98-2213-JWL, 1999 WL 450197, at *4 (D. Kan. June 24, 1999); *Gates v. Rohm & Haas Co.*, No. 06-1743, 2006 WL 3420591, at *2-5 (E.D. Pa. Nov. 22, 2006) (finding class member completed questionnaires to be protected by the attorney-client privilege and protected from disclosure, but requiring production of all information appearing on the completed questionnaires); *Vodak v. City of Chicago*, No. 03 C 2463, 2004 WL 783051, at *3-4 (N.D. Ill. Jan. 16, 2004) (questionnaires completed by putative class members were not discoverable because they were completed for the purpose of obtaining legal advice and, therefore, protected by the attorney-client privilege); *Penk v. Or. State Bd. of Higher Educ.*, 99 F.R.D. 511, 517 (D. Or. 1983) ("factual information gleaned by plaintiffs' counsel from the questionnaires sent to class members is discoverable by defendant through interrogatories served on plaintiffs' counsel.").  Indeed, Plaintiffs answered an interrogatory

13

to answer the question, 'What did you . . . write to the attorney?'"[29]  Because Defendants'

motion seeks discovery of a confidential communication (i.e., "What did you write to your

attorney?"), rather than underlying fact information, it must be denied.[30]

The Court finds that the class member survey responses sought by Defendants fall

under the protection of the attorney-client privilege.  The responses are communications

from clients in the course of an attorney-client relationship.  They were submitted for the

purpose of seeking legal advice and assistance from class counsel.  They were made in

confidence and have been kept confidential by Plaintiffs' counsel.[31]  "In actions involving

representation of multiple clients like this one, a client questionnaire is often prepared by

---

asking them to identify each class member that class counsel has communicated with by identifying each class member who accessed the survey.  *See* ECF No. 171-3.  Although Defendants assert that if the survey responses are deemed protected by the attorney-client privilege, "Plaintiffs must still provide Defendants with the factual information supplied in the . . . responses," there is no indication that there is an outstanding discovery request seeking such factual information.  The Court only decides the issue before it and will not compel discovery that has not been requested.

[29]*Upjohn Co.*, 449 U.S. at 396.

[30]*See Brown v. Unified Sch. Dist. No. 501*, No. 10-1096-JTM, 2011 WL 111693, at *4 (D. Kan. Jan. 13, 2011) (applying the attorney-client privilege to—and denying a motion to compel—documents summarizing a communication with counsel, even though the underlying facts in the documents were not protected); *Lintz*, 1999 WL 450197, at *4 (holding that, while "Plaintiffs may always inquire about whatever underlying facts are contained within the documents" through "deposition or through other discovery vehicles," documents containing confidential communications were protected by the attorney-client privilege).  To the extent dicta in *Morisky v. Pub. Serv. Elec. & Gas Co.*, the case upon which Defendants rely, contradicts the clear holdings of the Supreme Court and courts in this district, the Court declines to follow it.  *See Morisky*, 191 F.R.D. 419, 424 (D.N.J. 2000) (noting that even if an attorney-client relationship had been found to exist, questionnaire responses were factual and discoverable).

[31]Defendants state in their reply brief (ECF No. 176 at 15 n.8) that they are not arguing that Plaintiffs waived the attorney-client privilege, only that the survey responses are not protected by the attorney-client privilege.

counsel as an efficient substitute for more time consuming face-to-face interviews to provide the attorney with client information in response to focused questions fashioned by the attorney."[32]  Such communications are used "to impart information from client to counsel to promote informed, effective representation,"[33] that the Supreme Court has deemed protected by the attorney-client privilege.[34]

The Court finds Plaintiffs have meet their burden of establishing that the survey responses of class members are confidential communications protected from discovery by the attorney-client privilege.  Given this finding, the Court need not reach Plaintiffs' additional argument that the survey responses are subject to work-product protection.

## IV.   Expenses

Although Plaintiffs do not request their expenses incurred in responding to Defendant's Motion to Compel, under Fed. R. Civ. P. 37(a)(5)(B), if a motion to compel is

---

[32]*Hudson v. Gen. Dynamics Corp.*, 186 F.R.D. 271, 275 (D. Conn. 1999).

[33]*Id.*

[34]*Upjohn Co.*, 449 U.S. at 394-96 (holding that responses by Upjohn employees to questionnaires promulgated by Upjohn counsel were protected by the attorney-client privilege); *see also Barton v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 410 F.3d 1104, 1110-11 (9th Cir. 2005) (holding that responses to request for information posted on law-firm website were protected by the attorney-client privilege and noting, "The changes in law and technology that allow lawyers to solicit clients on the internet and receive communications from thousands of potential clients cheaply and quickly do not change the applicable principles"); *E.B. v. New York City Bd. of Educ.*, No. CV 2002-5118, 2007 WL 2874862, at *3 (E.D.N.Y. Sept. 27, 2007) (holding that responses to questionnaires promulgated by lawyers were protected by the attorney-client privilege); *Vodak*, 2004 WL 783051, at *2-3 (same); *Bauman v. Jacobs Suchard, Inc.*, 136 F.R.D. 460, 462-63 (N.D. Ill. 1990) (holding that responses to questionnaires returned to the EEOC by prospective claimants in an age-discrimination suit were protected by a *de facto* attorney-client privilege).

denied, the court "must, after giving an opportunity to be heard, require the movant . . . to pay the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees . . .."  The Rule further provides, however, that the Court "must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust."

In this case, the Court finds that Defendants were substantially justified in filing their Motion to Compel seeking Plaintiffs' trial plan and class member survey responses. Accordingly, the Court will not order Defendants to pay Plaintiffs' reasonable expenses incurred in opposing the motion under Rule 37(a)(5)(B).

**IT IS THEREFORE ORDERED** that Defendants' Motion to Compel Responses to Their Second Set of Interrogatories and Second Set of Requests for Production (ECF No. 171) is denied, as set forth herein.

**IT IS FURTHER ORDERED** that the parties shall bear their own expenses related to this motion.

Dated February 28th, 2012, at Kansas City, Kansas.

s/ David J. Waxse
David J. Waxse
U.S. Magistrate Judge