## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

RICK HARLOW, et al.,                          )
                                               )
        Plaintiffs,                    )
                                              )      **CIVIL ACTION**
v.                                            )
                                              )      **No. 08-2222-KHV**
SPRINT NEXTEL CORPORATION, et al.,            )
                                              )
        Defendants.                    )
_____)

### MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Motion For Preliminary Approval Of Settlement (Doc. #372) filed March 2, 2018, Plaintiffs' Second Supplemental Motion For Preliminary Approval Of Settlement (Doc. #387) filed May 21, 2018 and Plaintiffs' Motion For Approval Of Adequacy Of Settlement Notice Process (Doc. #389) filed May 21, 2018. Plaintiffs' unopposed motions seek (1) preliminary approval of the parties' proposed settlement agreement; (2) a finding that plaintiffs' requests for attorneys' fees are fair and reasonable; (3) approval of plaintiffs' requests for costs to class counsel and service awards to class representatives; (4) a final settlement approval hearing date; and (5) approval of the parties' proposed notice plan. Plaintiffs' Motion For Preliminary Approval (Doc. #372), ¶¶ 1-5; Plaintiffs' Motion For Approval Of Adequacy Of Settlement Notice Process (Doc. #389) at 1. For reasons below, the Court sustains plaintiffs' motions in part.

### Factual And Procedural Background

On May 9, 2008, four plaintiffs – former Sprint business channel employees – filed suit against their employers Sprint Nextel Corporation and Sprint/United Management Company (collectively, "Sprint"). Complaint (Doc. #1). Plaintiffs alleged that when Sprint acquired Nextel,

it failed to properly integrate the companies' payroll systems and routinely failed to pay commissions plaintiffs had earned. Id. On behalf of a nationwide class of similarly-situated Sprint employees, plaintiffs asserted claims for violations of the Kansas Wage Payment Act ("KWPA"), K.S.A. § 44-313 et seq., and breach of contract. See Second Amended Class Action Complaint (Doc. #43) filed August 22, 2008, ¶¶ 35-47.

On December 10, 2008, the Court certified a class pursuant to Rule 23(b)(3), Fed. R. Civ. P., composed of "those who worked in Sales and Distribution for [Sprint's] Business Direct Channel since January 1, 2006, including General Business, Enterprise, and Public Sector Account Executives (or those in similar positions), and those who managed these individuals, who were paid in full or in part based on commissions." Memorandum And Order (Doc. #77) at 4-17. The Court appointed Nichols Kaster, PLLP and Stueve Siegle Hanson LLP as class counsel. Id. at 18. The certification order also reassigned the case to the undersigned Judge because she was presiding over its companion case – Sibley v. Sprint Nextel Corp. et al., No. 08-cv-2063-KHV. Id. at 2-3, 19. The parties in Sibley and Harlow retained the same counsel and experts, and the classes asserted similar claims – i.e. that Sprint underpaid commissions due to issues with its payroll system arising from the Nextel merger.

On April 8, 2009, the Court directed plaintiffs to send potential class members a letter to place them on notice of the suit and their ability to opt out of it. Memorandum And Order (Doc. #91) at 2. On May 21, 2014, the parties stipulated that the class should be limited to "business direct channel employees who worked as 'transactional' sales representatives and/or 'hunters,' or their managers, including 'hybrid' managers, who worked in those positions at any time from January 1, 2006 through December 31, 2009." Amended Stipulation Specifying Class Membership

And Class Period And Providing For Corrective And Supplemental Notice (Doc. #350) at 3-5. Shortly thereafter, the parties sent supplemental class notices and notices of exclusion which described these limitations to current class members and potential new class members. Id. at 5-6; see Doc. #350-2 (notice letter); see Doc. #350-3 (same); see Doc. #350-4 (same); see Order Approving Amended Stipulation (Doc. #351) filed May 27, 2014.

When this action began, the parties engaged in active motion practice. On June 17, 2008, Sprint filed a motion to dismiss. Defendants' Motion To Dismiss Counts I And III-V, And Partially Dismiss Count II Of Plaintiffs' Amended Complaint (Doc. #13); Memorandum And Order (Doc. #44) filed September 2, 2008 (overruling motion as moot). On August 15, 2008, plaintiffs moved for certification. Plaintiffs' Motion For Rule 23 Class Certification (Doc. #38). After extensive briefing and oral argument, the Court granted certification. Memorandum And Order (Doc. #77) at 2, 19. Sprint attempted an interlocutory appeal of the certification order, which the Tenth Circuit denied. See Order (Doc. #87) filed February 6, 2009 (denying petition from appeal).

This action also required expansive discovery. Sprint alone produced more than 10 million pages of documents. Memorandum In Support Of Plaintiffs' Motion For Preliminary Approval Of Settlement (Doc. #373) filed March 2, 2018 at 6 (citing Declaration Of Michele R. Fisher In Support Of Supplemental Preliminary Approval Of Settlement (Doc. #373-1), ¶ 12). Plaintiffs deposed 37 Sprint corporate representatives, executives and employees. Declaration Of Michele R. Fisher (Doc. #373-1), ¶ 7. Both parties relied heavily on experts who examined Sprint's computerized commissions system. The Court summarized the experts' challenge as follows:

> As is the case in Sibley, the experts' opinions in Harlow will address the proper methodology for: (1) investigating enormous databases, (2) writing specialized code to create forensic computer programs, (3) manipulating complex data fields, (4) applying numerous interrelated accounting variables, and (5) calculating sales

commissions specific to tens of thousands of employees in the telecommunications industry.

Order Of Appointment (Doc. #348) filed May 2, 2014 at 2-3.  Because this case involved an extraordinary amount of highly technical data, the Court appointed a Special Master to oversee expert discovery and case management deadlines.  Id. at 3, 5-7.  On August 26, 2014, while the experts were preparing their initial reports, the Court stayed all deadlines to allow the parties and experts to focus on Sibley.  Order Staying Case Management Deadlines (Doc. #354) at 2; see also Declaration Of Michele R. Fisher (Doc. #373-1), ¶ 8.

On September 1, 2017, the Court ordered that the Sibley parties engage in mediation before the Honorable Daniel D. Crabtree of the District of Kansas.  Order Referring The Parties To Mediation (Doc. #762 in No. 08-cv-2063-KHV).  On January 8 and 9, 2018, the Sibley parties attended mediation sessions with Judge Crabtree.  ADR Report (Doc. #798 in No. 08-cv-2063-KHV) filed January 10, 2018.  The parties did not settle during these sessions, but on January 18, 2018 – with the continued aid of Judge Crabtree – the parties reached a settlement which resolved both cases.  See Memorandum In Support (Doc. #373) at 15.

## I.    Preliminary Settlement Approval

On March 2, 2018, plaintiffs moved for preliminary approval of their settlement agreement. Plaintiffs' Motion For Preliminary Approval (Doc. #372).  On March 8, 2018, the Court held a preliminary settlement approval hearing.  At the hearing, the Court voiced concerns about certain aspects of the proposed settlement agreement.  On March 16, 2018, plaintiffs filed a Supplemental Memorandum In Support Of Plaintiffs' Motion For Preliminary Approval Of Settlement (Doc. #378).  Plaintiffs' supplemental memorandum provided additional information concerning (1) revisions to the settlement process; (2) the parties' efforts to ensure the most practicable notice

of settlement; and (3) a new cy pres recipient. See generally id.

On April 5, 2018, the Court ordered the parties to submit additional information and show cause why they should not revise certain provisions of the proposed settlement agreement. Order To Show Cause (Doc. #380) at 1-7. On April 16, 2018, the parties responded and submitted for preliminary approval a revised settlement agreement. Plaintiffs' Response To Order To Show Cause (Doc. #381); Defendants' Response To The Court's Order To Show Cause [] Regarding The Supplemental Memorandum In Support Of Plaintiffs' Motion For Preliminary Approval Of Settlement (Doc. #383); see Settlement Agreement (Doc. #381-15). On May 2, 2018, plaintiffs submitted another revised settlement agreement which corrected typographical errors and revised one provision. See Settlement Agreement (Doc. #385-1). On May 9, 2018, the Court ordered the parties to show cause why they should not make further revisions to certain provisions of the settlement agreement. Second Order To Show Cause (Doc. #386). On May 21, 2018, plaintiffs filed Plaintiffs' Second Supplemental Motion For Preliminary Approval Of Settlement (Doc. #387), Plaintiffs' Motion For Approval Of Adequacy Of Settlement Notice Process (Doc. #389) and a revised settlement agreement. See Settlement Agreement in Declaration Of Michele R. Fisher In Response To Second Order To Show Cause (Doc. #388-1) at 3-44.

## II.    Proposed Settlement (Doc. #388-1)

The Settlement Agreement defines the settlement class as follows:

All business direct channel employees at Sprint who worked as transactional sales representatives and/or hunters, and those who managed them (including hybrid managers), during the Class Period of January 1, 2006 through December 31, 2009, who were paid in full or in part based on commission, and did not request exclusion from this case. The parties have agreed there are 3,919 such individuals in the Settlement Class.

Settlement Agreement (Doc. #388-1), ¶ 4.

A.    Settlement Payments

The Settlement Agreement provides that Sprint will pay a total settlement amount of $3,650,000.00. Id., ¶ 1.ll. From the settlement fund, class counsel will receive up to 23 per cent ($839,500.00) in attorneys' fees and up to $850,000.00 in litigation costs. Id., ¶ 8.a. After fees and litigation and settlement administration costs, the class will receive approximately 53 per cent of the fund – or $1,919,128.35. Doc. #381-12 at 2 (1,919,128.35/3,650,000.00 = .534). The claims administrator will allocate the fund among the class members. Settlement Agreement (Doc. #388-1), ¶ 6. Each class member will receive a pro rata settlement allocation based on the number of months he or she worked in a qualifying position at Sprint during the class period. Id. All class members will receive at least $25.00. Id. In addition to their settlement allocations, the four class representatives will receive $7,500.00 service payments. Id., ¶ 9.a.

B.    Notice Process

Within five days of preliminary approval, class counsel will issue a national press release concerning the settlement. Id., ¶ 11.d; Plaintiffs' Response To Order To Show Cause (Doc. #381) at 10-11, 13 (press release disseminated to more than 4,500 websites). Within 30 days of preliminary approval, the administrator will send postcards to class member addresses on file with class counsel. Settlement Agreement (Doc. #388-1), ¶¶ 11.b, 11.e; see Doc. #381-13 at 2 (sample postcard); Plaintiffs' Response To Order To Show Cause (Doc. #381) at 9-11. According to class counsel's third-party National Change of Address contractor, plaintiffs have current addresses for all but five of 3,919 class members. Id. at 14. The postcards will place class members on notice of (1) forthcoming notices of settlement, (2) forthcoming settlement checks, (3) their ability to opt out, (4) their duty to update or confirm contact information on the class website

(http://www.nka.com/case/sprintbusinesssettlement) and (5) where more information concerning the settlement can be found. Settlement Agreement (Doc. #388-1), ¶ 11.b. Thirty days after the administrator sends the postcards, the parties will provide the Court a report which outlines the number of class members who updated their contact information, the number of notice cards which were returned undeliverable or mailed to the wrong address, and other relevant data to confirm the adequacy of the address records. Plaintiffs' Response To Order To Show Cause (Doc. #381) at 10.

Within seven days of receiving permission from the Court, the administrator will send notices of settlement by first-class mail. Settlement Agreement (Doc. #388-1), ¶ 11.f. Within 14 days of mailing the notices of settlement, class counsel will send e-mail notice to the class members for whom it has e-mail addresses. Id., ¶ 11.g; see Plaintiffs' Response To Order To Show Cause (Doc. #381) at 11 (counsel has e-mail addresses for 1,072 class members). The notices of settlement will include (1) a lawsuit summary; (2) the class definition; (3) material settlement terms, including the total settlement amount, the amount of attorneys' fees and litigation costs, how the settlement will be allocated and the recipient's estimated allocation amount; (4) instructions on how to opt out or file an objection and relevant deadlines; (5) contact information for class counsel; (6) instructions on how class members can update their contact information; and (7) where to find more settlement information. See Settlement Agreement (Doc. #388-1) at 30-34 (sample notice of settlement). Notices will also inform class members that they do not need to fill out a claim form or take any action to receive their settlement check. See id. at 32.

C.     Settlement Execution

In general, class members will have 60 days after the administrator mails the first notice of settlement to file objections or to opt out. Id., ¶¶ 1.t, 12, 13. Class members can dispute their

settlement eligibility or allocation amount by filing an objection. <u>Id.</u>, ¶ 11.g.iv.

After the Court grants final settlement approval, the administrator will send class members checks which expire 90 days from the date of issuance. <u>Id.</u>, ¶¶ 1.m, 15. After the initial check-cashing period, the administrator will redistribute pro rata to participating class members the value of uncashed checks and any remaining settlement funds. <u>Id.</u>, ¶15.f. Settlement funds remaining after this redistribution will be donated to the <u>cy pres</u> beneficiary. <u>Id.</u>, ¶15.g. In exchange for the settlement payments, class members (including those who did not timely cash checks) will release "any and all claims for unpaid commissions under state law (including but not limited to under the Kansas Wage Payment Act), federal, or common law (including but not limited to breach of contract)" against Sprint which arose during the class period. <u>Id.</u>, ¶¶ 11.g.iii, 19.

<u>Analysis</u>

As stated, plaintiffs seek (1) preliminary approval of the parties' proposed settlement agreement; (2) a finding that plaintiffs' requests for attorneys' fees are fair and reasonable; (3) preliminary approval of plaintiffs' requests for costs to class counsel and service awards to class representatives; (4) a final settlement approval hearing date;[1] and (5) approval of the proposed settlement notice process. <u>Plaintiffs' Motion For Preliminary Approval</u> (Doc. #372), ¶¶ 1-5; <u>Plaintiffs' Second Supplemental Motion For Preliminary Approval Of Settlement</u> (Doc. #387); <u>Plaintiffs' Motion For Approval Of Adequacy Of Settlement Notice Process</u> (Doc. #389).

---

[1] Plaintiffs now plan to request a final approval hearing date when they provide the Court a report of the postcard mailing results. <u>Plaintiff's Motion For Approval Of Adequacy Of Settlement Notice Process</u> (Doc. #389) at 4 n.4. In light of this, the Court overrules as moot plaintiffs' request for a final approval hearing date. <u>Plaintiffs' Motion For Preliminary Approval</u> (Doc. #372), ¶ 5.

## I.    Preliminary Approval

Under Rule 23(e), Fed. R. Civ. P., once a class is certified, the action may not be settled, dismissed or compromised without Court approval.  Preliminary approval of a proposed settlement is the first of two steps required before a class action may be settled.  In re Motor Fuel Temp. Sales Practices Litig., 258 F.R.D. 671, 675 (D. Kan. 2009).  If the Court grants preliminary approval, it directs notice to class members and sets a hearing to determine the fairness of the class settlement. Id.

At the preliminary approval stage, the Court makes a preliminary evaluation of the fairness of the proposed settlement and determines whether the proposed settlement is within the range of possible approval, i.e. whether there is any reason not to notify class members of the proposed settlement and proceed with a fairness hearing.  See Gautreaux v. Pierce, 690 F.2d 616, 621 n.3 (7th Cir. 1982); Freebird, Inc. v. Merit Energy Co., No. 10-1154-KHV, 2012 WL 6085135, at *4-5 (D. Kan. Dec. 6, 2012); In re Motor Fuel Temp. Sales Practices Litig., 258 F.R.D. at 675-76.  The Court will ordinarily grant preliminary approval where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations; has no obvious deficiencies; does not improperly grant preferential treatment to class representatives or segments of the class; and falls within the range of possible approval.  The standards for preliminary approval of a class settlement are not as stringent as the requirements for final approval.  Freebird, 2012 WL 6085135, at *5.

In deciding whether to approve a proposed settlement, the Court assesses the reasonableness of the compromise, taking into account the context in which the parties reached the settlement.  See id. (citing Nat'l Treasury Emps. Union v. United States, 54 Fed. Cl. 791, 797 (2002)).  Although the Court must assess the strength of plaintiffs' claims, it should "not decide the merits of the case

or resolve unsettled legal questions." Id. (citing Carson v. Am. Brands, Inc., 450 U.S. 79, 88 n.14 (1981)).

In determining whether a proposed settlement is fair, reasonable and adequate, the Court considers the following factors:

(1) whether the proposed settlement was fairly and honestly negotiated;
(2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
(3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
(4) the judgment of the parties that the settlement is fair and reasonable.

Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1188 (10th Cir. 2002). While the Court will consider these factors in greater depth at the final approval hearing, they are a useful guide at the preliminary approval stage. See Am. Med. Ass'n v. United Healthcare Corp., No. 00-2800(LMM), 2009 WL 1437819, at *3 (S.D.N.Y. May 19, 2009); In re Motor Fuel Temp. Sales Practices Litig., 258 F.R.D. at 675; Lucas v. Kmart Corp., 234 F.R.D. 688, 693 (D. Colo. 2006). To receive preliminary approval, the settlement proponents must provide sufficient evidence that the settlement is fair. See Gottlieb v. Wiles, 11 F.3d 1004, 1015 (10th Cir. 1993); In re Sprint Corp. ERISA Litig., 443 F. Supp. 2d 1249, 1256 (D. Kan. 2006).

A.    Fair And Honest Negotiation

Because Harlow and Sibley involved similar claims, similar parties and the same counsel, the parties negotiated this settlement in conjunction with the Sibley settlement. In Sibley, the parties unsuccessfully attempted mediation five times. See Joint Motion To Stay Deadlines (Doc. #152) filed January 18, 2011, ¶¶ 2-11 (seeking stay in Harlow due to Sibley mediation). On January 8 and 9, 2018, the court-ordered mediation sessions before Judge Crabtree initially failed to resolve either Sibley or this matter. In the following days, the continued efforts of Judge Crabtree

and the parties led to settlement.  <u>Memorandum In Support</u> (Doc. #373) at 15.  Counsel for each

party have class action experience and zealously defended their respective clients' interests

throughout this action.  It is clear that extensive arms-length negotiation produced the settlement

agreement.  Accordingly, the first factor weighs in favor of preliminary approval.

      B.    <u>Questions Of Law And Fact</u>

Because the Court stayed proceedings for approximately four years, many questions of law

and fact remain.  <u>Order Staying Case Management Deadlines</u> (Doc. #354).  The parties have not

completed expert discovery or produced initial expert reports.  As in <u>Sibley</u>, expert discovery would

likely entail initial reports, rebuttal reports and supplemental reports, and lead to motions to exclude

expert testimony under <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993).  Accordingly,

the necessary expert analysis would probably take years to complete.  Further, the parties could still

file motions for summary judgment, and Sprint could move for decertification.  If the case

proceeded to trial, the jury would have to determine whether Sprint acted willfully, and thus should

be subjected to doubled damages under the KWPA.  Similarly, the Court would have to decide

whether prejudgment interest is appropriate.  Because of the relatively undeveloped procedural

posture of this case, even after ten years, the central question remains unresolved – <u>i.e.</u> whether

Sprint is liable for KWPA violations and breach of contract and if so, the amount of its obligation.

As shown, material questions of law and fact remained when the parties settled.  Thus, the second

factor supports preliminary approval.

      C.    <u>Immediate Recovery Compared To Future Relief</u>

Courts judge the fairness of a proposed compromise by weighing plaintiffs' likelihood of

success on the merits against the amount and form of the relief offered in settlement.  <u>Carson</u>, 450

U.S. at 88 n.14. In <u>Sibley</u>, the Court voiced concern whether a jury could possibly understand Sprint's complex computer systems and the methodologies of each expert. <u>Order Of Appointment</u> (Doc. #532 in No. 08-cv-2063-KHV) filed April 14, 2014 at 2 (questioning whether jury will "simply [] guess" between expert reports). This case would face similar issues because it also revolves around highly complex and technical data. This uncertainty and the relatively undeveloped procedural posture of this case make it difficult to determine plaintiffs' likelihood of success on the merits or to accurately predict plaintiffs' potential recovery at trial.

Under the agreement, the average class member recovers $482.04. <u>Plaintiffs' Response to Order To Show Cause</u> (Doc. #381) at 8. While class members could recover greater amounts at trial, full litigation of their claims would also entail greater costs and higher risk. Completing discovery and expert analysis would take years and incur significantly increased litigation costs. The trial itself would last weeks (or months) and could result in damages less than the settlement fund (or nothing). After trial, class counsel would be entitled to 33 per cent of any recovery, whereas under the settlement, they only seek 23 per cent. <u>Compare</u> <u>Legal Services Agreement</u> (Doc. #381-1) (class counsel fee agreement), <u>with</u> <u>Settlement Agreement</u> (Doc. #388-1), ¶ 8.a. Also, Sprint would likely appeal an unfavorable verdict. It illustrated its willing to appeal by seeking interlocutory review of the Court's certification order. <u>See</u> <u>Order</u> (Doc. #87). An appeal would delay recovery that class members have already waited more than a decade to receive. In sum, the immediacy and certainty of the settlement agreement outweigh the possibility of a larger recovery after trial and subsequent appeals. Thus, the third factor weighs in favor of preliminary approval.

D.      Parties Deem The Settlement Fair And Reasonable

The final factor asks whether the parties deem the settlement fair and reasonable.  "When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable." Marcus v. Kansas Dep't of Rev., 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002); see also Lucas, 234 F.R.D. at 693.  Experienced counsel represented both parties, and an active district judge oversaw settlement negotiations.  Thus, the Court presumes that the settlement agreement is fair and reasonable.  In addition, counsel for both parties and the class representatives have signed the proposed settlement agreement, indicating that they approve the agreement. Settlement Agreement (Doc. #388-1) at 23-28.  Accordingly, the fourth factor weighs in favor of preliminary approval.

As shown, all four factors support preliminary approval of the parties' proposed settlement agreement.  Thus, the Court sustains plaintiffs' motions for preliminary approval of settlement. Plaintiffs' Motion For Preliminary Approval Of Settlement (Doc. #372); Plaintiffs' Second Supplemental Motion For Preliminary Approval Of Settlement (Doc. #387).

## II.      Reasonableness Of Attorneys' Fees, Costs And Service Awards

Plaintiffs urge the Court to make preliminary findings concerning the reasonableness of the requested attorneys' fees, litigation costs and service awards.  See Plaintiffs' Motion For Preliminary Approval (Doc. #372), ¶¶ 2-4.[2]  Under Rule 23(h), Fed. R. Civ. P., the Court has broad authority to award reasonable attorneys' fees and nontaxable costs which are authorized by law or the parties' agreement. Law v. N.C.A.A., 4 F. App'x 749, 751 (10th Cir. 2001).  When a settlement

---

[2]      The Court substitutes fees in the parties' revised settlement agreement for specific fee amounts included in Plaintiffs' Motion For Preliminary Approval (Doc. #372).

creates a common fund, courts apply one of two methods to determine reasonable attorneys' fees: a percentage of the fund or the lodestar method. See Rosenbaum v. MacAllister, 64 F.3d 1439, 1445 (10th Cir. 1995). The Tenth Circuit applies a hybrid approach, which combines the percentage fee method with the specific factors traditionally used to calculate the lodestar. See Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974); see Gottlieb v. Barry, 43 F.3d 474, 483 (10th Cir. 1994).

Counsel request approximately 23 per cent of the common fund ($839,500.00) – significantly less than the 33 per cent contingency fee which plaintiffs agreed to pay. See Plaintiffs' Response To Order To Show Cause (Doc. #381) at 7; compare Legal Services Agreement (Doc. #381-1), with Settlement Agreement (Doc. #388-1), ¶ 8.a; see also In re Motor Fuel Temp. Sales Practices Litig., No. 07-md-1840-KHV, 2016 WL 4445438, at *7 (D. Kan. Aug. 24, 2016) (23 per cent fee request reasonable). While seeking preliminary approval, counsel have voluntarily decreased their requested fee on two occasions to prevent increased costs from adversely affecting class members. See Supplemental Memorandum In Support Of Plaintiffs' Motion (Doc. #378) at 3 (reducing requested fee); see Plaintiffs' Response To Order To Show Cause (Doc. #381) at 5 (same). To justify its fee under a lodestar analysis, counsel have submitted information concerning the time expended on this action (8,001 hours), their standard hourly rates and affidavits from attorneys who aver that such hourly rates are reasonable. See Memorandum In Support (Doc. #373) at 21; see Doc. #381-3 (attorney affidavits); Doc. #381-4 (same); Doc. #381-5 (same); Doc. #381-6 (same); Doc. #381-7 (same); Doc. #381-8 (same). Subject to objections and the more searching inquiry of final approval, the Court finds that the requested attorneys' fee, on its face, appears reasonable.

Plaintiffs also move the Court to make specific findings with respect to its requested litigation costs. See Plaintiffs' Motion For Preliminary Approval (Doc. #372), ¶ 3. The settlement agreement allows counsel to request reimbursement of litigation expenses up to $850,000.00. Settlement Agreement (Doc. #388-1), ¶ 8.a. Class counsel have provided a detailed accounting of past and estimated future expenses. See Doc. #373-5; see Doc. #381-12 at 2. The technical and complex nature of this case justifies expert-related expenditures of $704,761.34. Doc. #373-5 at 36. Subject to objections and the more searching inquiry of final approval, the Court finds that the request for litigation costs appears reasonable.

Plaintiffs request preliminary approval of proposed service payments of $7,500.00 to four class representatives. See Plaintiffs' Motion For Preliminary Approval (Doc. #372), ¶ 4. Service payments induce individuals to become class representatives and reward them for time sacrificed and personal risk incurred on behalf of the class. See UFCW Local 880-Retail Food Emp'r Joint Pension Fund v. Newmont Mining Corp., 352 F. App'x 232, 235 (10th Cir. 2009). Here, the class representatives expended significant time meeting with class counsel, reviewing case filings, producing documents, responding to written discovery, preparing for and attending depositions and assisting counsel. Declaration Of Michele R. Fisher (Doc. #373-1), ¶ 24. Additionally, the class representatives incurred significant risk by opposing their former or current employer. The total service payments ($30,000.00) account for just 0.8 per cent of the settlement fund. See Doc. #381-12 at 2 (30,000.00/3,650,000.00 = .008). Subject to objections and the more searching inquiry of final approval, the Court finds that the service awards are reasonable. See William B. Rubenstein, 5 Newberg on Class Actions § 17:1 (5th ed. 2018) (average incentive awards between $10,000 through $15,000).

### III.    Proposed Notice Plan

Finally, plaintiffs seek approval of their proposed settlement notice process.  Plaintiffs'
Motion For Approval Of Adequacy Of Settlement Notice Process (Doc. #389).  Rule 23(e)(1), Fed.
R. Civ. P., requires that "the [C]ourt direct notice in a reasonable manner to all class members who
would be bound by the [settlement]."  Courts retain discretion over the content and form of notice.
Gottlieb, 11 F.3d at 1013.  Rule 23(e) notice should "'fairly apprise' class members of the terms of
the proposed settlement and of their options."[3]  Gottlieb, 11 F.3d at 1013 (quoting 3B Moore's
Federal Practice, ¶ 23.80[3], at 23-484); see Fed. R. Civ. P. 23(e)(1) Advisory Committee's Notes
(2003) (settlements in Rule 23(b)(3) suits "may require individual notice").  In addition to
Rule 23(e), the proposed notice must meet the requirements of due process.  U.S. Const. amend. V;
Dejulius v. New England Health Care Emps. Pension Fund, 429 F.3d 935, 943-44 (10th Cir. 2005).
To satisfy due process, notice must be "reasonably calculated, under all the circumstances, to
apprise interested parties of the pendency of the action and afford them an opportunity to present
their objections."  Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950); see In
re Integra Realty Res., Inc., 262 F.3d 1089, 1110-11 (10th Cir. 2001) (due process satisfied when
77 per cent of class received notice of settlement).

The proposed notice plan largely relies on notices sent through the mail (postcards and
notices of settlement) because class counsel have confirmed addresses for all but five of 3,919 class
members.  Plaintiffs' Response To Order To Show Cause (Doc. #381) at 14.  Before the

---

[3]      Rule 23(c)(2)(B), Fed. R. Civ. P., imposes a higher notice requirement – that class
members receive "the best notice practicable under the circumstances."  This higher standard is
designed to ensure that class members who desire to pursue their own claims individually have the
opportunity to exercise their rights to opt out of the class.  See Gottlieb, 11 F.3d at 1012.

administrator sends notices of settlement, class members will have an opportunity to update and confirm their contact information on the settlement website. Settlement Agreement (Doc. #388-1), ¶¶ 11.b, 11.d-.e; Plaintiffs' Response To Order To Show Cause (Doc. #381) at 9-11. In particular, a national press release and notice postcards will prompt class members to confirm their contact information. Settlement Agreement (Doc. #388-1), ¶¶ 11.b, 11.d-.e. After the class members receive notice postcards, the Court will receive a postcard mailing report and have a final opportunity to review the adequacy of the class member address data. Id., ¶ 11.e; see Plaintiffs' Response To Order To Show Cause (Doc. #381) at 10 (report will summarize number of class members who updated contact information, number of postcards returned undeliverable and other relevant data). When the Court approves the postcard report, the administrator will send notices of settlement by first-class mail. Settlement Agreement (Doc. #388-1), ¶ 11.f. If a notice of settlement is returned undeliverable or with a forwarding address, the administrator will re-mail it to the forwarding address or attempt to locate the correct address and re-mail it. Id., ¶ 11.i. The proposed notice plan places all reasonably identifiable class members on notice because each class member should have an opportunity to confirm his or her current address and receive an individual notice of settlement through first-class mail. 3 Newberg on Class Actions § 8:28 (5th ed. 2017) (first-class mail "ideal" individual notice). Further, the parties will supplement individual notices with a national press release and e-mail notice to the class members for whom class counsel have e-mail addresses. Settlement Agreement (Doc. #388-1), ¶¶ 11.d. 11.g.

Because Rule 23(e) does not provide specific guidance with respect to the content of settlement notices, the Court must determine whether the proposed notices fairly apprise class members of the material settlement terms and their options. See In re Integra Realty Res., Inc., 262

F.3d at 1111. In general, notices of settlement should provide plain-language descriptions of the following: (1) the class definition; (2) how to opt out or object to the settlement and relevant deadlines; (3) material terms of the settlement, including the total settlement amount, how the parties calculated class member allocations, the recipient's estimated allocation, attorneys' fees and service awards; (4) the time and place of the final settlement approval hearing; and (5) the contact information for class counsel. See Manual For Complex Litigation (Fourth) § 21.312 (2004). As noted, the proposed notices of settlement include concise, plain-language explanations of the preceding settlement terms. See Settlement Agreement (Doc. #388-1) at 30-35 (sample notice of settlement). In light of the foregoing, the proposed notice plan meets the requirements of Rule 23 and due process. Thus, the Court sustains Plaintiffs' Motion For Approval Of Adequacy Of Settlement Notice Process (Doc. #389).

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion For Preliminary Approval Of Settlement (Doc. #372) filed March 2, 2018 and Plaintiffs' Second Supplemental Motion For Preliminary Approval Of Settlement (Doc. #387) filed May 21, 2018 are **SUSTAINED in part**. Plaintiffs' request for a final approval hearing date in Plaintiffs' Motion For Preliminary Approval Of Settlement (Doc. #372) filed March 2, 2018, ¶ 5, is **OVERRULED** as moot in light of plaintiffs' plan to request a final hearing date when they provide the Court a report on the postcard mailing.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion For Approval Of Adequacy Of Settlement Notice Process (Doc. #389) filed May 21, 2018 is **SUSTAINED**. Plaintiffs shall immediately begin the notice plan as described in the Settlement Agreement (Doc. #388-1) filed May 21, 2018.

Dated this 4th day of June, 2018 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge